IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ADRIAN ALEXANDER STARKS,

       Petitioner,

v.

MICHAEL MEISNER, Warden,

       Respondent.

ORDER

14-cv-844-jdp

---

  Petitioner Adrian Alexander Starks is currently in the custody of the Wisconsin Department of Corrections at the Redgranite Correctional Institution. He seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his state court conviction for two counts of first-degree reckless homicide—under Wisconsin's "Len Bias" law assigning criminal liability to the manufacturer or distributor of a controlled substance that is a substantial factor in a victim's death—and one count of delivery of more than 50 grams of heroin. Dkt. 9.

  After the parties briefed Starks's petition, I ordered them to submit supplemental briefs concerning four key pieces of evidence that Starks pointed to in support of his claim that his trial counsel was ineffective for advising him to stipulate that heroin caused Michael Ace's death:

- An undated coroner's report listing Ace's manner of death as "accidental" and including a printout from the state crime lab listing the drugs found in Ace's system and noting that morphine was identified at a level of 77 micrograms per liter in Ace's blood. *See* Dkt. 17-3, at 18-19.

- Dr. Robert Huntington's dictated notes from his May 6, 2005 autopsy of Ace, which states that Ace may have died due to "intoxication or . . . intoxication plus aspiration," and lists "coronary artery disease" as an "alternate possibility." Dkt. 32-9, at 1-3.

- A state crime lab toxicology report dated July 25, 2005, listing the drugs found in Ace's system, noting that morphine was identified at a level of 77 micrograms per liter in Ace's blood, and explaining that the "reported therapeutic level of morphine in blood is 100" micrograms per liter. Dkt. 32-8, at 1-2.

- Dr. Huntington's August 8, 2005 autopsy report, which states, "This is a drug death. Serious coronary disease is also present." Dkt. 36-4.

I asked the parties to answer two questions concerning each piece of evidence: (1) when did Starks obtain each piece of evidence; and (2) did he present each piece of evidence to the Wisconsin state courts? Dkt. 42. I explained that I cannot consider evidence not presented to the state courts, so I asked Starks to explain whether, if some of the evidence was not presented to the Wisconsin state courts, he wants to (1) stay his case and return to federal court after he has exhausted his claims based on the new evidence in state court; or (2) proceed only with the currently exhausted claims.

The parties have now responded. I begin by addressing their responses to my first two questions: (1) when did Starks obtain each piece of evidence; and (2) did he present each piece of evidence to the Wisconsin state courts? Starks indicates in a declaration that he obtained the undated coroner's report and August 8 autopsy report before or during the state-court postconviction relief proceedings and presented them both to the state courts. Dkt. 44. He also obtained the July 25 toxicology report before the postconviction relief proceedings but didn't present it to the state courts because he couldn't fully understand it and wasn't aware of its importance until December 2015, when briefing in this case was nearly complete. That's when he first obtained Dr. Huntington's dictated notes from the May 6 autopsy—he didn't present that to the state courts because he didn't have it during his state postconviction relief proceedings. Dkt. 44. The state argues that Starks's declaration is self-serving. But a party's

2

own declaration is sufficient to support his position "as long as it otherwise contains information that would be admissible if he were testifying directly." *Rooni v. Biser*, 742 F.3d 737, 740 (7th Cir. 2014). The state makes no other objection to this evidence, so I will accept it.

The state argues that Starks had all four pieces of evidence before filing his postconviction relief petition in state court but failed to present any of that evidence to the state courts. But the evidence it cites does not support its argument. First, it cites Starks's statement in his state-court appellate brief that "Starks had the discovery when, in fact, Starks had not read Stellner[] or Ace'[s] autopsy reports prior to trial." Dkt. 47, at 4 (quoting Dkt. 17-2, at 17). The state takes this statement out of context: Starks was paraphrasing his trial counsel's testimony at a *Machner* hearing, not asserting the statement as a fact. *See* Dkt. 17-2, at 17. And even if Starks was given all of the "discovery" before trial, there's no indication that all four pieces of evidence were included in the discovery that he was given. Second, the state cites Starks's appellate counsel's testimony during the May 2009 hearing on his motion to withdraw that he "already provided to [Starks] all of the original record materials that were forwarded to my office." Dkt. 17-31, at 15:3–4. But again, the state provides no evidence that these four records were part of the "original record materials," so this testimony doesn't amount to much. All we know is that Starks got all of the evidence his appellate counsel had by May 2009. Finally, the state cites a January 15, 2016 letter from the Dane County District Attorney to the Office of Lawyer Regulation in response to Starks's complaint that he had not received all of the discovery in his case, which stated, "[A]ll discovery was turned over to the defense at the time of [Starks's] trial, so his defense attorneys already have the documents he is requesting." Dkt. 43-2, at 2. This is hearsay. *See* Fed. R. Evid. 801. The state does not explain

3

why this statement is admissible evidence. And even if I were to consider it, again, the state provides no evidence that these four records were part of the "discovery" provided to Starks's trial counsel. (I'll also note that the state's contention that Starks didn't present the undated coroner's report to the state courts is directly contradicted by the record, as I pointed out in my order on supplemental briefing. *See* Dkt. 42, at 2–3.)

So I'll take Starks at his word. He says he presented the undated coroner's report and the August 8 autopsy report to the state courts, so I can consider those pieces of evidence in his habeas petition. But the dictated notes from the May 6 autopsy and the July 25 toxicology report were not before the Wisconsin Court of Appeals when it denied Starks's postconviction petition.

That brings me to the options I presented to Starks in my order on supplemental briefing: stay the habeas petition to allow for exhaustion of claims concerning this new evidence in the state courts, or proceed in this court. Starks asks me to proceed with his claims but expand the record to include the new evidence. But as I explained, "[M]y task under § 2254(d)(1) is to review the reasonableness of the decision of the Wisconsin Court of Appeals, and in doing so, I am limited to the evidence that was before that court." Dkt. 42, at 2. The Supreme Court has clearly stated, "If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Cullen v. Pinholster*, 563 U.S. 170, 185 (2011). I cannot consider the dictated notes from the May 6 autopsy and the July 25 toxicology report because the court of appeals did not have those pieces of evidence when it adjudicated Starks's ineffective assistance of counsel claim.

I have the option of staying Starks's petition if he has good cause for his failure to exhaust his new claims in state court and those claims are not plainly meritless. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005); *see also Shuttlesworth v. Richardson*, No. 14-cv-567, 2016 WL 6651412, at *3 (W.D. Wis. Nov. 10, 2016). Starks says he didn't get the dictated notes from the May 6 autopsy until December 2015, despite multiple requests for such evidence. And although he had the July 25 toxicology report before filing his postconviction petition in state court, he couldn't decipher it or grasp its significance until December 2015. He immediately pursued claims based on those pieces of evidence in this court. So he has good cause for failing to exhaust claims based on those pieces of evidence in state court. And those claims are not plainly meritless. The dictated notes and July 25 toxicology report, coupled with the other evidence concerning Ace's cause of death, indicate that Ace may have died as a result of coronary artery disease and that regardless, the level of heroin in his system may not have been high enough to kill him. If Starks's trial counsel had the dictated notes and July 25 toxicology report in his possession when he advised Starks to stipulate that heroin caused Ace's death, a state court could conclude that Starks received ineffective assistance of counsel. If Starks's trial counsel didn't have these items, Starks may have a potentially meritorious claim under *Brady v. Maryland*, 373 U.S. 83 (1963). This doesn't mean that Starks will necessarily prevail on his claims in state court; but there is at least a possibility that he will, so I must allow him the opportunity to do so.

So again, we are faced with two options: (1) stay the § 2254 petition so that Starks may present his claims on the new evidence in state court; or (2) proceed with Starks's petition in this court without considering the new evidence. If Starks chooses the first option, he may present his claims concerning the dictated notes and July 25 toxicology report in this court

once he has exhausted them in state court—I will stay consideration of his petition so that he has time to exhaust. If Starks chooses the second option, he will not be able to proceed on claims concerning the dictated notes and July 25 toxicology report at any other point. *Burton v. Stewart*, 549 U.S. 147, 154 (2007) ("[Petitioner] may proceed with only the exhausted claims, but doing so risks subjecting later petitions that raise new claims to rigorous procedural obstacles."). I will give Starks one more opportunity to choose between these two options.

ORDER

IT IS ORDERED that petitioner Adrian Alexander Starks may have until October 4, 2017, to respond to this order notifying the court whether he wants to stay his habeas petition so that he can present any unexhausted claims to the state courts.

Entered September 13, 2017.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge